## MILLER VS. BARKELOO ET AL.

The Supreme Court having adjudged, on motion to quash a supersedeas of a delivery bond judgment, that such judgment was a mere nullity, all parties are bound by the adjudication (*Borden et al. vs. State use, etc.*, 6 *Eng.* 519;) and it was error in the Circuit Court to hold the judgment as still subsisting.

*Error to the Circuit Court of Pulaski county.*

Hon. WILLIAM H. FEILD, Circuit Judge.

WATKINS & GALLAGHER for the plaintiff.

CUMMINS for the defendants.

Mr. Justice SCOTT delivered the opinion of the Court.

This was a *scire facias*, issued the 8th day of November, A. D. 1852, to revive a judgment recovered by Miller, against the defendants in error, in the Pulaski Circuit Court, the 14th day of November, A. D. 1840. The pleas interposed were:

1st. *Nul tiel record*.

2d. Payment.

3d. Set up the giving and forfeiture of a delivery bond, under the old forthcoming bond system.

4th. Set up the same facts with an an additional averment that, on the 8th March, 1841, Miller, on motion, took judgment in the Circuit Court on this delivery bond, which, it is alleged, remains in full force.

To the *first* plea, Miller replied that there *was* such a record as that recited in the *scire facias*, which he prayed should be inspected. To the *second*, he replied that the judgment was not paid. To the *third* he demurred; and to the *fourth* plea he replied; 1st. That after the rendition of the judgment upon the delivery bond, " the execution of said judgment was perpetually and forever inhibited and superseded by the consideration and judgment of the Supreme Court of the State of Arkansas, which said judgment of said Supreme Court still remains in full force and effect."

2d. That there is no record of said judgment on the delivery bond.

To the *first replication*, a demurrer was interposed; to the *second replication* issue was joined and tried by the Court, and upon inspection of the record found for the defendants, who were thereupon adjudged to go hence, and recover their costs. It does not appear that the other issues were in any way otherwise disposed of.

A bill of exceptions taken by the plaintiff shows that upon the trial of the issue formed upon the second replication to the *fourth* plea, the defendants, to maintain the issues on their part, read in evidence the judgment mentioned in said plea; and thereupon the plaintiff, to sustain said issue on his part, proved that a *fi. fa.* issued on the judgment on the delivery bond mentioned in said plea, and was levied on certain property, and returned without sale. That a *ven. ex.* was afterwards issued, and on the 20th of October, A. D. 1845, the Hon. Williamson S. Oldham, then one of the Judges of the Supreme Court of this State, made an order directed to the clerk of said Supreme Court, reciting that as said judgment was rendered against said defendants without their appearance in said Circuit Court on

the motion for judgment against them, and without service of process on them to appear, and without any other legal obligation upon them to appear in said Circuit Court, said Court had no jurisdiction over the persons of said defendants, and said judgment against them was absolutely null and void, and said writ of *ven. ex.* had improvidently and illegally issued; and awarding a writ of supersedeas to stay all further proceedings under said judgment; which writ of supersedeas was accordingly issued. And on the same day, the plaintiff, Miller, appeared in the Supreme Court in term time, and filed his motion praying said Court to quash said writ of supersedeas, because the same was issued improvidently, and without authority of law; which motion the Court refused and overruled. It was also admitted and agreed by the parties, as appears in their bill of exceptions, that the proceedings of the Supreme Court in the premises should be taken and considered as they appear reported in the third volume of English's Reports, beginning at page 318, and that the facts stated in said bill of exceptions are to have and be taken with the same effect, as if the several records, by which they are to be established, had been produced and read, and then incorporated in the bill of exceptions.

From the argument of the counsel it is to be inferred that the Court below found the issue, that was tried, for the defendants, upon the ground that the proceeding in the Supreme Court, and of the Judge in vacation, which was thus recognized and confirmed, was itself a nullity; and that, consequently, the judgment upon the forthcoming bond was still in force.

That position is altogether inconsistent with the doctrines of the case of *Borden et al. vs. The State use, etc.*, (6 *Eng. R.* 519,) ever since adhered to in this Court.

But the counsel contends that, although this may be so, nevertheless the judgment upon the delivery bond ought not to be considered as annulled and vacated; because, as they contend, the supersedeas ran only to the process of execution, and not to the judgment itself. But this Court, in that case, could not so have considered the action of the supersedeas; because, it distinctly appears in the report of the case in 3*d Eng. R. p.*

320, (which report is, by reference, expressly incorporated in the bill of exceptions as a part of the case at bar) that it was urged as a ground for quashing the supersedeas on motion, when both parties were in Court, that it *went to the judgment itself*, as well as to the process of execution; for the counsel is reported as having said: "The writ of supersedeas in this case is to the judgment itself, and also to the process of execution based thereon. Can such a writ be legally issued? The plaintiff insists that it cannot, consistently with any known principles of law, and that it is without precedent." (*Same page.*)

And when that motion was heard and determined, not only were both parties present by counsel, but there was also before the Court a transcript, not only of the process of execution, but also of the judgment, as appears by copies set out in the report of the case on page 319.

Whether these transcripts were presented voluntarily by the parties, or were brought in by the more regular mode of a writ of certiorari, does not appear.

And that the adjudication of the Court was upon the judgment as well as upon the process of execution, is to be inferred from the concluding language of the opinion delivered, which, after going into an examination of the record of the supposed judgment, and commenting upon it, concludes as follows, to wit: "We are clear, therefore, that the record in this case does not disclose such facts as the statute requires to constitute a constructive notice to the defendants, and that, consequently, the judgment rendered upon the delivery bond is a mere nullity."

It is true that a formal quashal of the judgment in express terms does not appear, but inasmuch as, in legal contemplation, "void things are no things at all," an objection predicated upon that omission, would savor more of form than of substance.

The operation of the doctrine of the case of *Borden et al. vs. The State*, cannot, therefore, be obviated on this ground, as the counsel seem to suppose.

The judgment upon the forthcoming bond having been thus

held for naught by this Court, it was error for the Court below to hold it still subsisting.

Nor was the action of this Court in that case without precedent, as seems to have been supposed by counsel. In JUDGE TUCKER's Commentaries on the laws of Virginia, in treating of the writ of supersedeas it is said: " It is in England an auxiliary process, and was used as the companion of the writ of error; but, in Virginia, it is in general a mode by which the record of the judgment of an inferior Court is removed before a superior jurisdiction, for the purpose of correcting errors in the proceedings or judgment. And when it is so, it corresponds, and is of the same nature with a writ of error, the principles governing the latter applying to the former." Citing the case of *White vs. Jones*, 1 *Wash. R. p.* 163, where the Court of appeals, by PRESIDENT PENDLETON says: " A writ of supersedeas in England is merely an ancillary process; and so it is, to some extent, in this country. But, in general, it is a mode by which the record of a judgment of an inferior Court is removed before a superior jurisdiction." And it appears in the Virginia Reports throughout, that the term " inferior Courts " is not used in these authorities in its technical sense, but in the popular; since, in practice there, as these reports show, the supersedeas and certiorari have almost entirely displaced the writ of error.

But we are not to be understood, by this citation of authority, to justify the former practice of this Court as to the writ of supersedeas, to indicate any thing more than that there was some precedent for it.

The judgment in this case must be reversed, and the cause remanded.